UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:23-cv-23888-RUIZ/LOUIS

| | |
|---|---|
| **Eric Volpe**, et al, | CLASS REPRESENTATION |
| Plaintiffs, | |
| vs. | |
| **VMSB, LLC**, | |
| Defendant. | |

## PLAINTIFFS' MOTION TO ENFORCE AND APPROVE SETTLEMENT

Plaintiffs, through counsel, file this Motion to Enforce and Approve Settlement Agreement (the "Motion"), invoking the courts inherent jurisdiction, or alternatively, to the extent necessary or helpful, pursuant to Rules 59(a)(2), (e) and 60(b)(2), (4)-(6), Fed. R. Civ. P. to open, make findings, alter, or amend judgment, or grant relief from "Final Judgment" [ECF No. 150], to permit enforcement and approval of FLSA settlement agreement, as follows:

## SUMMARY OF THE ARGUMENT

Plaintiffs maintain that the parties have entered into a valid and enforceable settlement of this FLSA case as clearly set forth in detailed correspondence exchanged, offering and accepting the proposed terms of settlement. Defendant, however, maintains that their unambiguous settlement offer was "automatically withdrawn" and could no longer be accepted following the Court's entry of an order granting summary judgment and a form of "Final Judgment", both docketed on March 28, 2025. Plaintiffs move the court to enforce the settlement in accordance with the Court's inherent powers and ancillary powers to enforce settlement of actions pending before it, and to approve settlement which is required in FLSA cases. Enforcement of settlements is highly favored by applicable federal and state law. Alternatively, to the extent necessary or

helpful, Plaintiffs move for the same relief in accordance with Rules 59(a)(2), (e) and 60(b)(2), (4)-(6), Fed. R. Civ. P. which permit opening, altering, or amending of judgment, if entered, to consider enforcement and approval of the settlement agreement accepted after judgment.

## RELEVANT PROCEDURAL HISTORY

1.      On October 11, 2023, Plaintiffs Eric Volpe, Enzo Ferrer, and Vincenzo Matino, filed their Fair Labor Standards Act Complaint [ECF No. 1] against Defendant VMSB, LLC ("VMSB"), which was subsequently amended by the operative "Second Amended Fair Labor Standards Act Complaint" [ECF No. 79], asserting claims for FLSA unpaid overtime wages (Count I), common law suit for breach of agreement to pay contract wages (Count II), and FLSA tip confiscation (Count III).

2.      On July 11, 2024, Plaintiffs and VMSB filed cross-motions for summary judgment [ECF Nos. 90 and 91].

3.      During the case, in addition to the original three (3) plaintiffs, forty-six (46) persons filed contents to join this lawsuit in accordance with § 216(b) of the FLSA. [See ECF No 135]. Altogether, forty-nine (49) individuals are by definition party plaintiffs in this case. *Mickles on behalf of herself v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018) (persons who file consents to join "have the same status in relation to the claims of the lawsuit as do the named plaintiffs") (quoting *Prickett v. DeKalb County*, 349 F.3d 1294, 1296 (11th Cir. 2003)).

4.      On August 13, 2024, the Court entered an amended scheduling order [ECF No. 111] establishing *inter alia* a new two-week trial period commencing March 10, 2025.

5.      In anticipation of the scheduled trial set to commence on March 10, 2025, during the week of February 17th, counsel for the Plaintiffs and counsel for VMSB began preparation of a pretrial stipulation, jury instructions, and verdict forms, which were due to be filed jointly by February 21, 2025, as required by the Court's scheduling order [ECF No. 111].

6.      As preparation of the required joint pretrial filings were being finalized, on the morning of February 21, 2025, counsel for VMSB extended by email a written settlement offer.

7.      **Open-Ended Written Settlement Offer**. Under the terms of the settlement offer proposed by VMSB, each of the 49 Plaintiffs would provide a release of all claims raised in this lawsuit in exchange for payment in full of the entire FLSA unpaid overtime wage claim (Count I). The settlement offer included a detail of the manner by which the "regular rate" of pay would be calculated for overtime premium purposes; specifically, the overtime premium due for every overtime hour worked would be calculated based upon a regular rate of pay as reflected in "weekly pay spreadsheets" produced in discovery. In other words, the regular rate of pay for each workweek would be calculated to include the fixed hourly rate paid, *plus* "service charge" distributions made. The settlement offer also contemplated that each Plaintiff would file an "updated" statement of claim to reflect the amounts due as so calculated.

8.      The settlement offer included payment of full liquidated damages, plus attorney's fees and costs, and also specifically contemplated that settlement would be presented to the Court for approval upon acceptance. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ("When [parties] present to the district court a proposed settlement, the district may enter a stipulated judgment after scrutinizing the settlement for fairness.").

9.      The settlement offer was open-ended in that it did not provide a date by which the offer expired. Neither was acceptance of the settlement offer conditioned upon the occurrence (or non-occurrence) of any event. VMSB's written settlement offer is attached hereto as **Exhibit 1**.

10.      **Court Removes Case from Trial Calendar**. Later that same day (February 21st), at 4:03 p.m., the Court *sua sponte* entered its Paperless Order [ECF No. 145] removing this case from the trial calendar, and stated that the matter would be returned to calendar, if necessary.

11. **Court Enters Order on Cross-Motions for Summary Judgment**. In the late afternoon of Friday, March 28, 2025, the Court entered its "Order on Cross-Motions for Summary Judgment" [ECF No. 149], by which it granted summary judgment for VMSB's on all three counts, and denied Plaintiffs' motion for summary judgment on all counts. Moments later, the Court entered a form of "Final Judgment" [ECF No. 150] in VMSB's favor.[1]

12. At no time following VMSB's extension of the settlement offer, did it say or do anything to withdraw or revoke the offer. VMSB did not withdraw or revoke the offer when the Court entered the Paperless Order on February 21, 2025 removing this case from the trial calendar. Neither did VMSB withdraw or revoke the offer after the Court entered the "Order on Cross-Motions for Summary Judgment". Neither did VMSB withdraw or revoke the offer after the Court entered the form of "Final Judgment".

13. **Plaintiffs Accept Settlement Offer**. Three calendar days after the orders were entered, at 5:33 p.m. on Monday, March 31, 2025, Plaintiffs *accepted* VMSB's settlement offer unconditionally. See acceptance email, attached as **Exhibit 2**. Shortly after delivery of Plaintiffs' acceptance of the settlement offer, counsel for VMSB replied by email, suggesting that "the offer

---

[1] /    The form of Judgment entered by the Court lists the three original Plaintiffs and 33 of the Plaintiffs (Carlos Dieppa twice; once misspelled "Deippa") who filed consents to join after the original pleading. Omitted from the Final Judgment are the names of 13 Plaintiffs who filed Consents to Join. [*See* Plaintiffs' Notice of Filing Listing of All Current Plaintiffs, ECF No. 135. The following Plaintiffs are omitted from the form of Final Judgment entered: **Yurisdaly Venegas Rodriguez, Juan Triana, Erfan J. Trombetti Cabrera, Juan Rincon-Duarte, Daniele D'Aostino, Jonathan Laipcigier, Elena Alano, Llan Martin Lara, Miki Syllaime Ducheine, Pedro J. Gavidia, Rafael Creston de Moraes, Dale Anthony Bruse, Jr.,** and **Murilo Pistelli Cruz.** It is unclear why 13 Plaintiffs were omitted. This could be significant because a "decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Rule 54(b), Fed.R.Civ.P.

was automatically withdrawn" upon entry of the Court's entering the orders described. Email, attached as **Exhibit 3**.

## LEGAL STANDARD

"The parties to a civil action have the right to settle the controversy between them by agreement at any time and an agreement settling all issues in the case is binding not only upon the parties but also the court." *Reed by & Through Reed v. United States*, 891 F.2d 878, 881 (11th Cir. 1990) (quoting *Wallace v. Townsell*, 471 So.2d 551, 664 (5th DCA 1985)).

"A settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law." *Schwartz v. Fla. Bd. of Regents*, 807 F. 2d 901, 905 (11th Cir. 1987); *Florida Education Assoc., Inc. v. Atkinson*, 481 F.2d 662, 663 (5th Cir. 1973) ("Florida contract law governs this analysis."); *De Cespedes v. Bolanos,* 711 So. 2d 216, 217 (Fla. 3d DCA 1998) (quoting *Suggs v. Defranco's, Inc.*, 626 So.2d 1100, 1100 (Fla. 1st DCA 1993)). The key to determining whether a valid settlement has been reached is whether the settlement agreement is sufficiently specific and mutually agreeable as to "its essential terms." *Id*. (citing *Metropolitan Date County v. Estate of Hernandez*, 591 So.2d 1124, 1124 (Fla. 3d DCA 1992)); *see also Patrick v. Christian Radio,* 745 So. 2d 578,581 (Fla. 5th DCA 1999). "Even though all the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them." *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp*., 302 So.2d 404, 408 (Fla.1974) (cited with approval by *De Cespedes v. Bolanos*, 711 So.2d at 217). Uncertainty as to nonessential terms will not preclude enforcement. *Carpaneda v. Quayside Place Partners, LLP*, 2010 WL 2696958, at *2 (S.D. Fla. July 7, 2010) (citing *Spiegel v. H. Allen Holmes, Inc.*, 834 So.2d 295, 297 (Fla. 4th DCA 2003)); An enforceable settlement agreement need only be clear, definite and capable of proof. *Reed v. United States*, 717 F. Supp. 1511, 1516-17 (S.D. Fla. 1988).

Under Florida law, settlement agreements are highly favored and are enforced **whenever possible**. *See Robbie v. City of Miami,* 469 So. 2d 1384, 1385 (Fla.1985). "Where the parties have agreed to the essential terms of a settlement, it will be enforced." *State Farm Mutual Auto Insurance Co. v. Interamerican Car Rental, Inc.*, 781 So. 2d 500, 502 (Fla. 3d DCA 2001). "A settlement agreement does not have to be in writing, and does not have to fix all details of the parties' understanding in order to be enforceable." *Id.; see also Ecological Science Corp.,* 522 F.2d 171, 176 (5th Cir.1975), *cert. denied,* 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976); *Dorson v. Dorson,* 393 So.2d 632 (Fla. 4th DCA 1981); *see also Patrick v. Christian Radio*, 745 So. 2d 578, 579 (Fla. 5th DCA 1999). Caselaw is legion in support of the principle that both Florida law and public policy highly favor enforcement of settlement agreements **whenever possible**. *Sun Microsystems of Ca., Inc. v. Eng'g & Mfg.Sys., C.A.,* 682 So. 2d 219, 220 (Fla. 3d DCA 1996) ("The public policy of the State of Florida, as articulated in numerous court decisions, highly favors settlement agreements among parties and will seek to enforce them whenever possible."); *see also Sec. Ins. Co. of Hartford v. Puig,* 728 So. 2d 292, 294 (Fla. 3d DCA 1999) ("Settlement agreements are governed by contract rules and are highly favored."); *Treasure Coast, Inc. v. Ludlum Constr. Co.,* 760 So. 2d 232, 234 (Fla. 4th DCA 2000) (In Florida, settlement agreements are "highly favored" "and will be enforced when it is possible to do so.")

## <u>MEMORANDUM</u>

The Court must enforce the settlement reached since the Plaintiffs unconditionally agreed to all essential terms of settlement before the offer to settle was revoked or withdrawn by VMSB.

## I.    THE PARTIES ENTERED INTO AN ENFORCEABLE SETTLEMENT AGREEMENT.

VMSB unquestionably tendered a settlement offer to the Plaintiffs. The settlement offer was never revoked by VMSB and was *accepted* by the Plaintiffs, unconditionally, while the offer

was still outstanding. Although Plaintiffs accepted the settlement offer, VMSB refuses to abide by the accepted terms of settlement by jointly submitting the same to the Court for approval. Very shortly after the Plaintiffs communicated their acceptance of VMSB's settlement offer, via email, VMSB communicated to Plaintiffs' counsel the notion that Plaintiffs no longer had the power to accept the settlement because the Court had, three days earlier, entered the Order on Cross-Motions for Summary Judgment and a form of Final Judgment. Specifically, VMSB's attorney took the position that the settlement offer was "automatically withdrawn" upon entry of the Order and Judgment. In good faith conferencing prior to filing the instant Motion, VMSB also took the position that the settlement offer previously extended was not sufficiently definite as to its essential terms, and that acceptance was no longer possible for want of consideration, or that it was not accepted within a reasonable time. Accordingly, a primary issue is whether an enforceable settlement agreement was reached. As Plaintiffs have stated, resolution of this question, both in terms of interpretation and enforcement, turns upon Florida contract law. *Schwartz v. Fla. Bd. of Regents*, 807 F. 2d 901, 905 (11th Cir. 1987); *Florida Education Assoc., Inc. v. Atkinson*, 481 F.2d 662, 663 (5th Cir. 1973); *De Cespedes v. Bolanos,* 711 So. 2d 216, 217 (Fla. 3d DCA 1998).

In determining whether an enforceable settlement agreement has been reached, courts apply an "objective test" to consider "external signs" manifesting an agreement, rather than evidence of "two minds in one intention." *Robbie v. City of Miami*, 469 So.2d at 1385; *Sakowitz v. Waterside Townhomes Cmty. Ass'n, Inc.*, 338 So.3d 26, 29 (Fla. 3d DCA 2022). Here, counsel for the Plaintiffs clearly and unconditionally accepted a settlement offer that was clear and unambiguous with respect to all essential terms. The settlement offer was neither limited temporally nor tied to the occurrence (or non-occurrence) of any event. Plaintiffs accepted the offer (which remained unwithdrawn) three full days after entry of the summary judgment orders.

Because the settlement offer was clear and definite, and accepted within a reasonable time, the parties entered into an enforceable settlement enforceable by applicable contract law.

### A.      Plaintiffs Timely Accepted an Open, Unrevoked Settlement Offer.

Obviously, for a settlement to have been reached, there must have been an offer and acceptance. It can hardly be argued that VMSB did not make a settlement offer on February 21, 2025. So long as an "offer has been neither accepted nor rejected, the offer remains open, and imposes no obligation upon either party, - the one may decline to accept, or the other may withdraw his offer; and either rejection or withdrawal leaves the matter as if no offer had ever been made . . . If the offer does not limit the time for its acceptance, it must be accepted within a reasonable time. If it does, it may, at any time within the limit, and so long as it remains open, be accepted or rejected by the party to whom, or be withdrawn by the party by whom, it was made." *Minneapolis & St. L. Ry. Co. vs. Columbus Rolling-Mill Co*., 119 U.S. 149, 151 (1886). The making of an offer is an element in the formation of a contract, not merely evidence of the offeror's state of mind. Thus, an offer is not altered or withdrawn merely because circumstances change, or the offeror has a change of mind; rather an offer continues in effect in spite of a change in the offeror's attitude. 1 Richard A. Lord, *Williston on Contracts*, §5:1 (4th ed.). It has been said that the making of an offer creates in the offeree a power of acceptance which continues until it is withdrawn or revoked, or until it is accepted. *Id*. In making an offer, an offeror may define a time within which his offer may be accepted. *Id*. at §5:2. There are four primary ways that an offer may be terminated: rejection by the offeree; lapse of the time specified (or of a reasonable time if not specified), revocation by the offeror; and death. *Id*.

It is clear that Plaintiffs never rejected VMSB's settlement offer, and that acceptance of the offer was not temporally limited by the lapse of any specified period of time, or the occurrence of any event. Since no time for acceptance is fixed, it is a generally accepted rule of law that

acceptance raises the offer to an enforceable contract. *Id*. at §5:9. What constitutes a reasonable time will ordinarily be a question of fact, the determination of which will depend upon all of the circumstances. *Id*. Thus, it may be said that "what amounts to a reasonable time will vary within very wide limits". *Id*. However, "the most important" circumstance to be considered "is the nature of the proposed contract." *Id.*

Here the nature of the contract is a settlement agreement. As such, it must be reiterated that what constitutes a reasonable time for the consideration of a settlement offer would be greater than the amount of time necessary for consideration of an offer to buy or sell property, the value of which is subject to rapid fluctuations of price. *Id.* This is especially so in light of the legion of case law making clear that settlement agreements are highly favored by law and public policy. Where enforcement is possible, settlements will be enforced. See *inter alia*, *State Farm Mutual Auto Insurance Co. v. Interamerican Car Rental, Inc.,* 781 So. 2d 500, 502 (Fla. 3d DCA 2001).

Forty-nine (49) Plaintiffs filed Consents to Join this FLSA case. Accordingly, it is not unreasonable for the Plaintiffs to have accepted a settlement offer 38 days after it was extended. The particular settlement offer in this case specifically contemplates that the Court would retain jurisdiction to approve the settlement and requires that Plaintiffs execute releases, and file amended statements of claim, because counsel for VMSB thought amendment of claims would be necessary, or helpful, for purposes of obtaining Court approval of the settlement, which *is* required in FLSA cases. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). Notably, Plaintiffs accepted the settlement offer *unconditionally*, accepting even the laborious terms requiring amended statements of claim and execution of releases. Plaintiffs accepted VMSB's offer exactly as delivered without any change or suggested modification.

The reasonableness of acceptance in this case is illustrated as well by VMSB's stated basis for refusing to follow through with settlement. The only basis for the refusal was the unsupportable argument that the entry of the Court's summary judgment orders acted to "automatically" withdraw the settlement offer. The clear suggestion from this refusal is that acceptance of the settlement offer would have been reasonable and honored if it had occurred at any time ***before*** the Court issued its rulings, but that the power of acceptance automatically terminated immediately upon the entry of the orders, even though the offer was not limited in temporal scope nor tied to any external event such as court rulings. There is no authority for the idea that settlement offers are automatically withdrawn; rather settlement offers must be revoked or withdrawn.

It is undisputable that VMSB was free to define *when* its settlement offer would lapse. 1 Richard A. Lord, *Williston on Contracts* §5:2. VMSB could have stated a date by which acceptance was required, or it could have tied timely acceptance upon the occurrence of any specific event. Further, VMSB was free to revoke the offer at any time before acceptance, but *not after* acceptance. *Kendel v. Pontious*, 261 So. 2d 167, 170 (Fla. 1972) ("the offeror could revoke the offer provided the communication of such revocation is received prior to the acceptance."). VMSB specifically chose not to do any of the above, and should not be heard to suggest now that acceptance of the offer – in exactly the form and manner extended – was tied to an unstated occurrence. *See e.g., Rost v. Atkinson*, 292 P.3d 1041, 1044 (Colo. App. 2012) ("parties who make a settlement offer while a summary judgment motion is pending can condition the offer on the motion's outcome . . . In addition to controlling the settlement offer's provisions, the offeror also controls its timing . . . assumed the calculated risk that a favorable decision on the pending motion for summary judgment motion might negate the need for settlement . . .").

There is no support for the idea that entry of summary judgment "automatically withdraw[s]" an open settlement offer. On the contrary, revocation or withdrawal of an offer must be communicated to the offeree. Lord §5:11; *see also Conference Am., Inc. v. Conexant Sys., Inc.*, 508 F. Supp. 2d 1005, 1018 (M.D. Ala. 2007) (quoting Lord, § 5:9 [sic][2]) ("it is universally settled that a revocation requires communication and that, therefore, an acceptance made prior to a communicated revocation will create a binding contract."). "The parties to a civil action have the right to settle the controversy between them by agreement at any time and an agreement settling all issues in the case is binding not only upon the parties but also upon the court." *Reed by & Through Reed v. United States*, 891 F.2d 878, 881 (11th Cir. 1990). This proves especially true in FLSA cases where settlements must be approved by the Court. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982).

Applying Florida law, courts in this district have consistently enforced settlement agreements based upon this fundamental principle of contract: a settlement offer, indeed any contractual offer, becomes effective as of the time acceptance is communicated to the offeror by placing it in the mail. *American Appraisal Associates, Inc. v. American Appraisals, Inc.*, 531 F.Supp.2d 1353, 1358 (S.D. Fla. 2008) (citing *Kendel v. Pontious*, 244 So.2d 543, 544 (Fla. 3d DCA 1971) (applying the "deposit acceptance rule"). In *American Appraisal*, the Court enforced a settlement reached *after* the case had been involuntarily dismissed under Rule 41(b), Fed.R.Civ.P. Said the court:

> "An acceptance of a contract may be transmitted by any means which the offeror has authorized the offeree to use and, if so transmitted, is operative and completes the contract as soon as put out of the offeree's possession, without regard to whether it ever reaches the offeror, unless the offer otherwise provides." *Kendel v. Pontious,*

---

[2] /   Although the published opinion purports quote Lord, § 5:9, we feel this is a scrivener's error, and that Hon. Watkins certainly meant to quote Lord, § 5:11, where the quoted language actually resides and where a legion of supporting caselaw is also cited at fn. 6.

261 So. 2d 167, 169 (Fla. 1972), *citing Restatement of Contracts,* § 64. If an offer is accepted without conditions, and without varying its terms, and the acceptance is communicated to the other party without unreasonable delay, a contract arises, from which neither party can withdraw at its pleasure. *Id.*

*American Appraisal,* 531 F.Supp.2d at 1358.

The Florida case of *Sakowitz v. Waterside Townhomes Community Association, Inc.*, 338 So. 3d 26, 28 (Fla. 3d DCA 2022) ("There was no time limitation in the offer . . .") illustrates how even a period of eighty-five (85) days was reasonable to accept an open-ended settlement offer in the context of litigation involving only two parties. In *Sakowitz*, a Florida appellate court enforced a settlement agreement where a counteroffer was accepted by email eighty-five (85) days after it had been extended, even though the acceptance included a contemporaneous request for information. By contrast, in the case before the Court now, there are 49 Plaintiffs who through counsel accepted an open-ended settlement offer – in exactly the form extended – after a period of only thirty-eighty (38) days. Here, the settlement offer was not tied to summary judgment motions, which had been fully briefed for approximately seven months before VMSB extended the settlement offer on February 21, 2025. By comparison, in this case, Plaintiffs (49 of them) responded to their employer's open-ended settlement offer within 38 days.

It is also notable in determining what is a reasonable period of time within which to accept a settlement offer under Florida law, that there is a Florida *statute* which *governs* settlement offers made in accordance with statutory terms; that statute permits a forty-five-day (45) period of deliberation by which an offeree should accept such a statutory settlement offer, the passing of which would trigger a conditional right to initiate cost-shifting procedures at the end of litigation. The statute provides, in pertinent part:

The offer shall remain open for 45 days unless withdrawn sooner by a writing served on the offeree. An offer that is neither withdrawn nor accepted withing 45 days shall be deemed rejected.

§45.061(1), Fla. Stat. Thus, a Florida statute pertaining to settlement essentially mirrors the universal principles of contract law discussed above, and defines 45 days to be a reasonable period of time to accept an unrevoked settlement offer. While Plaintiffs do not contend that this statute *defines* the length of the power of acceptance (indeed *Sakowitz* found a much longer period to be reasonable), given the applicability of Florida law, the enactment of this statute does illustrate that 38 days is a reasonable period of time within which to accept a settlement offer.

Here, a period of deliberation was necessary to obtain consensus among 49 Plaintiffs, and the settlement proposed by VMSB unambiguously required unanimity, execution of releases, and the preparation of amended claims for each of them, all based upon a proposed and accepted formula, calculated from an extensive, identified set of data. The terms of settlement are certainly provable, but acceptance sometimes takes time, particularly under the circumstances of this case. Notwithstanding these numerous conditions, Plaintiffs communicated their acceptance with due deliberation within 38 days. Notably, VMSB was undisputedly free to withdraw its settlement offer at any time during that period, just as it was obviously free to establish a deadline for acceptance when it first extended the offer.

**B.      The Settlement Offer Accepted was Sufficiently Specific as to Every Essential Term, and Capable of Proof.**

Shortly after the moment Plaintiffs communicated their acceptance of the settlement offer to counsel for VMSB, VMSB responded in writing to revoke the offer stating "[g]iven the Court's Order from Friday and the Final Judgment entered on the same date..., therefore the offer was automatically withdrawn." However, as previously discussed, there is no automatic revocation of a settlement offer, and VMSB was required to revoke or withdraw the offer prior to acceptance if it was no longer prepared to settle. Days later, during further good faith conferencing undertaken by Plaintiffs prior to filing of this motion, counsel for VMSB also suggested that the offer they

delivered could not be enforced because it was not sufficiently definite as to essential terms, although no ambiguity of any specific term was identified. Counsel also suggested that acceptance of the offer could not be made because the entry of the form of "Final Judgment" rendered the consideration represented by the promised "release of all claims" insufficient because the claims ceased to exists immediately upon the entry of the form of judgment. Accordingly, we discuss whether the offer was sufficiently detailed with respect to the material terms.

The test for whether a settlement agreement was reached is an objective one which considers whether the "external signs" manifest an agreement between the parties rather than whether evidence reveals "two minds in one intention.". *Robbie v. City of Miami*, 469 So.2d at 1385; *Sakowitz v. Waterside Townhomes Cmty. Ass'n, Inc.*, 338 So.3d 26, 29 (Fla. 3d DCA 2022). Under the objective test, it is the objective (rather than the subjective) intent of the parties, manifested in the words they express in their agreement, that determines enforceability. *See McGhee Interests, Inc. v. Alexander Nat'l Bank*, 135 So. 545, 547 (Fla. 1931). "Where the parties have agreed to the essential terms of a settlement, it will be enforced." *State Farm Mutual Auto Insurance Co. v. Interamerican Car Rental, Inc.,* 781 So. 2d 500, 502 (Fla. 3d DCA 2001). An offer is not affected by an offeror's subjective change in attitude, particularly when the change is not communicated by delivering a revocation or withdrawal of the offer. Lord, §5:1 and §5:11.

In this case, the settlement offer extended by VMSB on February 21, 2025 was objectively clear in all material elements. We are at a loss to decipher what essential term of settlement is not "sufficiently specific". The settlement offer provided for payment "to the collective", of "all of the overtime premium", the method for calculating of the regular rate of pay for purposes of paying the overtime premium due (i.e.: "flat hourly pay plus surcharge redistribution" "as reflected in weekly pay spreadsheets"), "plus liquidated damages," "and your attorney's fees." See **Exhibit**

**"1"**. Payments would be made "[i]n exchange for release of all claims in the lawsuit". *Id*. The offer also provided that the parties would need to "work on updated calculations" for all of the Plaintiffs, which would be incorporated into a form of settlement agreement, so as to be acceptable to the Court for approval in a "motion to approve" the same. *Id*. The terms described in the offer define the full measure of relief available under an FLSA overtime case, and Plaintiffs accepted these terms by return email, without making any change whatsoever. VMSB however refuses to go forward with settlement they proposed and Plaintiffs accepted.

Acceptance of a settlement offer (indeed any contract under Florida law) becomes effective as of the moment it is deposited in the mail. *American Appraisal Associates, Inc. v. American Appraisals, Inc*., 531 F.Supp.2d 1353, 1358 (S.D. Fla. 2008) (citing *Kendel v. Pontious*, 244 So.2d 543, 544 (Fla. 3d DCA 1971)). "If an offer is accepted without conditions, and without varying the terms, . . . a contract arises, from which neither party can withdraw at its pleasure." *Id*. To be enforceable, a settlement need not account for every contingency. *See Robbie v. City of Miami*, 469 So.2d at 1385; see also *In re: Rolsafe Intern, LLC* 477 B.R. 884, 909 (Bankr. M.D. Fla. 2012). A settlement agreement need not be signed by the parties, and can be reached orally, so long as sufficiently specific as to its essential terms and is capable of proof. *American Appraisal, 531 F.Supp.2d at 1358*. (citing *Reed*, 717 F. Supp. at 1516-17). Uncertainty as to non-essential terms will not preclude enforcement of a settlement agreement. *Spiegel v. H. Allen Holmes, Inc.*, 834 So.2d 295, 297 (Fla. 4th DCA 2003). For example, "[t]he absence of a general time of performance, [] is not fatal to the enforceability of this contract. 'The general Florida rule is that when a contract does not expressly fix the time for performance of its terms, the law will imply a reasonable time.'" *De Cespedes v. Bolanos,* 711 So. 2d at 218 (quoting *Denson v. Stack*, 997 F.2d 1356, 1361 (11th Cir.1993); citing *Doolittle v. Fruehauf Corp.*, 332 So.2d 107, 109-10 (Fla. 1st DCA 1976)). "Even

though all the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them." *Bolanos at 217-218* (citing *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So.2d 404, 408 (Fla. 1974)). The terms of settlement in this case were clearly defined as to every essential term and the settlement agreement must be enforced.

### C.   Plaintiffs' Promised Release of All Claims is Adequate Consideration to Support Settlement.

Parties have the right to settle at any time. *Reed*, 891 F.2d at 881 (11th Cir. 1990). Any suggestion that settlement is void for lack of consideration is frivolous. *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1305 (11th Cir. 2007) (quoting *Diaz v. Rood,* 851 So.2d 843, 846 (2003) ("It is clear that a promise, no matter how slight, can constitute sufficient consideration so long as a party agrees to do something that they are not bound to do**.**" (internal quotations omitted)); *see also Cintas Corp. No. 2 v. Schwalier*, 901 So. 2d 307 (Fla. 1DCA 2005). Consideration may consist of a benefit to the promisor or a detriment to the promisee. *Bayshore Royal Co. v. Doran Jason Co.*, 480 So. 2d 651, 656 (Fla. Dist. Ct. App. 1985). Absent fraud, adequacy of consideration is not for judicial scrutiny. *Sharrow v. Dania*, 180 So. 18, 21 (Fla. 1938).

## II.   THE COURT ENJOYS JURISDICTION IN THIS CASE TO ENFORCE AND APPROVE SETTLEMENT OF AN FLSA CASE.

The Court has jurisdiction to enforce settlement agreements in a pending case. In this case, VMSB's settlement offer was accepted while the case was still pending, since acceptance occurred while the time for appeal and the filing of post-trial motions had not lapsed. Moreover, even if the entry of a form of "Final Judgment" meant that the case is no longer pending, the "Final Judgment" entered by the Court in this case would not end litigation, given that it does not dispose of all of the parties to the lawsuit. Finally, even if the Court had entered a final judgment adjudicating the rights and liabilities of ***all*** the parties, as required by Rule 54(b), the Court would still have

jurisdiction to enforce settlement post-judgment in the context of post-judgment motions under *inter alia* Rules 59 and 60, Fed. R. Civ. P.  The circumstances here meet the standards for relief under Rules 59 and 60.

### A.    The Case Remains Pending.

It is well settled that a district court has "inherent power to summarily enforce settlement agreements entered into by parties litigant in a pending case." *Cia Anon Benezolana De Navigacion v. Harris*, 374 F.2d 33 (5th Cir. 1967); *see also Reed v. United States*, 717 F.Supp. 1511, 1514 (S.D. Fla. 1988). As a general principle, Florida courts have held that an action remains pending from the time of filing until after final judgment and such time as an appeal is taken or the time for an appeal expires. *See Smith v. Dawson*, 880 So.2d 784, 785 (Fla. 2d DCA 2004); *Suarez v. Hillcrest Dev. of S. Fla., Inc.,* 742 So.2d 423, 425 (Fla. 3d DCA 1999) (citing *Bridges v. Bridges*, 520 So.2d 318 (Fla. 2d DCA 1988)); *Wilson v. Clark*, 414 So.2d 526, 530 (Fla. 1st DCA 1982) ("The general rule is that an action remains pending in the trial court until after a final judgment and such time as an appeal is taken or time for an appeal expires. If an appeal is taken, the action is still pending until final disposition.") (citing *Southern Title Research Co. v. King*, 186 So.2d 539, 544-45 (Fla. 4th DCA 1966)). *See also United States v. Marrero,* 573 Fed. Appx. 896, 897 (11th Cir. 2014) (for purposes of a motion for relief from a criminal judgment, a case remains pending until claims exhausted by issuance of mandate on direct appeal.); *Reed*, 891 F.2d at 881 (death does not effect an extinguishment of judgment when party dies during a pending appeal, while post-trial motions remain undisposed) (citations omitted). Moreover, because the Final Judgment entered by the Court does not adjudicate rights and liabilities of all parties, the action remains pending as to all parties (and claims) in accordance with Rule 54(b), Fed.R.Civ.P. While the judgment clearly includes the names of the three original Plaintiffs and 33 Opt-in Plaintiffs, it conspicuously omits the names of 13 Plaintiffs who filed respective Consents to Join

in accordance with § 216(b) of the Act. *See* footnote 1, *supra*, at p. 4. By filing their respective Consents to Join, those 13 persons whose names are omitted from the form of Final Judgment achieved the status of "party plaintiffs". *Mickles on behalf of herself v. Country Club Inc.*, 887 F.3d 1270, 1277–78 (11th Cir. 2018).

It is axiomatic that parties to a civil action can settle the differences between them at any time. *Reed*, 891 F.2d at 881. This is no less true with respect to the settlement of FLSA claims. Indeed, settlement of FLSA claims are essentially stipulated judgments requiring court approval. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982) ("When [parties] present to the district court a proposed settlement, the district may enter a stipulated judgment after scrutinizing the settlement for fairness."). Thus, federal question jurisdiction necessarily remains for purposes of approving an FLSA settlement and awarding mandatory attorney's fees under FLSA, both of which are also expressly contemplated by the offer accepted by Plaintiffs.

**B.     Even if the Case did not Remain Pending After Entry of Judgment, the Court Retains Jurisdiction to Consider Post-Judgment Motions Under Rules 59 and 60.**

Following the entry of judgment which actually adjudicates the claims of all parties, the Court still retains jurisdiction under Rules 59(a)(2), (e), and 60(b)(2),(4)-(6), which provide procedural vehicles to open fact-finding, amend, or alter judgment, or for relief from judgment, to permit approval of a settlement. Otherwise, there could be no settlement of FLSA cases after judgment was entered, even if the time for filing post-trial motions or an appeal remained extant. Indeed, a settlement reached post-judgment could, by definition, constitute "new" evidence within the meaning of Rules 59(e) and 60(b)(2), respectively. *See Galera v. Relief Net Rd. Services, Inc.*, No. 3:13-CV-4723-L, 2015 WL 3386850, at *4 (N.D. Tex. May 26, 2015). Alternatively, under Rule 59(a)(2), the Court may reopen a judgment to make additional findings or enter a new judgment. *See Jenkins v. Anton*, 922 F.3d 1257, 1264 (11th Cir. 2019). Similarly, Rule 60 (b) is

remedial and therefore afforded liberal construction. *Greater Baton Rouge Golf Ass'n v. Recreation & Park Comm'n for Par. of E. Baton Rouge*, 507 F.2d 227, 228-29 (5th Cir. 1975). Moreover, even if a post-judgment settlement was not "new evidence" for purposes of the rules, Rule 60(b)(6) has been described as "a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984) (quoting 7 J. Lucas & J. Moore, Moore's Federal Practice paragraph 60.27[2] at 375 (2d ed. 1982)). Certainly, the Court retains jurisdiction after final judgment is entered to consider timely filed post-judgment motions, including motions to open, alter or amend the judgment, or to obtain relief therefrom, or to make additional findings. Rule 4(a)(4)(A)(i)-(vi), Fed. R. App. P. Indeed, the Court retains jurisdiction even after an appeal is filed to rule upon such timely-filed post-judgment motions. Rule 4(a)(4)(B)(i), Fed. R. App. P.

The settlement offer by VMSB in this case fully contemplates that the Court would retain jurisdiction to approve the settlement, given that FLSA settlements require Court approval. See *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). In fact, FLSA settlements are essentially stipulated judgments requiring court approval. *Id*. ("When [parties] present to the district court a proposed settlement, the district may enter a stipulated judgment after scrutinizing the settlement for fairness."). Following the entry of judgment, Rules 59(a)(2) (motion to reopen judgment), 59(e) (motion to alter or amend judgment for new evidence), 60(b)(2),(4)-(6) (motions for relief from judgment for new evidence, or because the judgment is void, or no longer enjoying prospective application, or any other reason justifying relief) all provide vehicles to either amend, or obtain relief from, a judgment already entered to permit approval of a settlement.

The Court would have discretion to grant relief under Rules 59 (a)(2) or (e), and 60(b) in light of the fact that settlement was reached post-judgment. *See, generally, Jenkins v. Anton*, 922

F.3d 1257 (11th Cir. 2019). However, without the exercise of such discretion to enforce and approve settlement, as required, it would be impossible for parties to settle their FLSA claims. Accordingly, and to the extent that this Court were to determine that the form of Final Judgment entered adjudicated the claims of 13 parties not named in the Final Judgment, Plaintiffs request that the Court open, alter or amend the judgment to consider the new evidence represented by the offer and acceptance of settlement or, alternatively, that the Court grant relief from the Final Judgment under Rule 60(b) to enforce and approve the FLSA settlement.

## CONCLUSION

WHEREFORE, Plaintiffs pray this Honorable Court grant the instant Motion to Enforce and Approve settlement of an FLSA case, either through its continuing or inherent jurisdiction to enforce and approve settlements or, in the alternative, that the Court open, alter or amend the Final Judgment pursuant to Rule 59, or to grant relief from judgment under Rule 60 in order to permit enforcement and approval of the FLSA case, and entry of necessary orders in furtherance thereof.

## CERTIFICATE OF CONFERRAL

Undersigned counsel for the Plaintiffs exchanged several emails with opposing counsel on March 31, April 3, and 4, 2025, and actually conferred by phone on April 7, 2015 in furtherance of good faith filing requirements. Respective counsel discussed their positions and determined that the motion would be opposed by VMSB. VMSB asserted that the settlement offer was "automatically withdrawn" upon the entry of the Court's summary judgment order and subsequent final judgment, that the offer was not sufficiently specific to be enforceable, that acceptance was communicated an unreasonably long period after the offer was extended, and that acceptance lacked consideration because of the summary judgment orders.

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2025 a true and correct copy of the foregoing was electronically filed with the Clerk of the Court via CM/ECF and served on the parties listed in the Service List below in the manner indicated therein.

ANTHONY F. SANCHEZ, P.A.
ATTORNEYS FOR PLAINTIFFS
6701 SUNSET DRIVE, SUITE 101
MIAMI, FLORIDA 33143
TEL.: 305-665-9211

BY:  /s/ ANTHONY F. SANCHEZ
ANTHONY F. SANCHEZ
FLORIDA BAR No.789925
afs@laborlawfla.com

## SERVICE LIST

Anthony F. Sanchez, Esq.
Florida Bar No.: 789925
afs@laborlawfla.com
faz@laborlawfla.com
***Counsel for Plaintiffs***
ANTHONY F. SANCHEZ, P.A.
6701 Sunset Drive, Suite 101
Miami, Florida 33143
Tel:  305-665-9211

Andrew B. Zelmanowitz, Esq.
Florida Bar No.: 74202
azelman@bergersingerman.com
LTorres@bergersingerman.com
MAvin@bergersingerman.com
Nikki Branch, Esq.
Florida Bar No.: 1039430
nbranch@bergersingerman.com
LTorres@bergersingerman.com
MAvin@bergersingerman.com
Kenneth W. Waterway, Esq.
Florida Bar No.: 994235
kwaterway@bergersingerman.com
LTorres@bergersingerman.com
MAvin@bergersingerman.com
***Counsel for Defendant***
BERGER SINGERMAN, LLP
201 East Las Olas Blvd., Suite 1500
Fort Lauderdale, FL 33301
Tel:  954-695-8224
Fax: 954-523-2872
*Via Notice of Electronic Filing*